# EXHIBIT D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Ronald Lee, II, and
Proven Industries, Inc.,

    Plaintiffs,

v.                                          CASE NO.

Pacific Lock Company a/k/a Paclock
and Gregory B. Waugh,

    Defendants.

## COMPLAINT

Plaintiffs, Ronald Lee, II ("Lee") and Proven Industries, Inc. ("Proven"), by and through their undersigned counsel, sues Defendants Pacific Lock Company a/k/a Paclock ("Paclock") and Gregory E. Waugh ("Waugh") and alleges:

### NATURE OF THE ACTION

1. This is a civil action for injunctive relief, damages and other appropriate relief brought by Lee against Defendants, regarding a Mutual Non-Disclosure Agreement ("NDA") Defendant Paclock entered into with Lee, pursuant to which Lee disclosed to Defendants, in confidence, confidential and proprietary information involving the components of a trailer coupler trailer lock

1

designed by Lee along with market analysis and data research regarding this nascent market niche; and which Defendants have breached by using and misappropriating this confidential and proprietary information to permit Defendant Paclock manufacture a competing knock-off trailer coupler lock and introduce same into the nascent market niche created by Plaintiffs, all in violation of the Agreement; the Federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act; Plaintiffs also seek redress for Defendants' tortious interference with Plaintiffs' advantageous business relationships.

## PARTIES

2. Plaintiff Lee is an individual who resides in the state of Florida in this district. Lee is the President and owner of Proven.

3. Plaintiff Proven is a Florida corporation with its principal place of business at 2310 South Dock Street, Unit 111, Palmetto, Florida 34221

4. Defendant Paclock is a California corporation with its principal place of business at 25605 Hercules Street, Valencia, CA 91355.

5. Defendant Waugh is an individual who resides in the state of California. Defendant Waugh is Chief Executive Officer and a Director of Defendant Paclock.

2

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(l) as the matter in controversy is between citizens of different states and exceeds the sum of $75,000.00, exclusive of costs and interest. Additionally, this court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836(c).

7. At all times material, Defendants have conducted all business dealings and communications regarding sales of Paclock products for Proven's trailer coupler locks, directly with Lee, who is located in this judicial district.

8. As alleged in greater detail below, Paclock, under the direction and control of Waugh, has engaged in tortious conduct directed toward Plaintiffs in this judicial district, and Paclock has breached a contract with Lee in this judicial district.

9. As alleged in greater detail below, Paclock, under the direction and control of Waugh, sold and delivered a trailer coupler lock (the "UCS Lock" referenced below) to Proven in this judicial district.

10. Paclock also operates a website accessible to Florida residents at www.paclock.com and actively sells products to Florida residents directly, through distributors and retailers located within the State of Florida.

11. Accordingly, Paclock engages in business in the State of Florida within the meaning of Fla. Stat. § 48.193(2), and/or has otherwise engaged in conduct submitting Waugh and Paclock to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.192(1)(a)(1) by committing a tortious act against Plaintiffs within the State by misappropriating the confidential and proprietary information and trade secrets disclosed to Defendants under the NDA; pursuant to Fla. Stat. § 48.193(1)(a)(6) by causing injury to Plaintiffs through Defendants misappropriation in California and failure to maintain and protect the confidentiality of Plaintiffs' confidential and proprietary information and trade secrets while simultaneously manufacturing products used within the State of Florida; and, in the case of Paclock, pursuant to Fla. Stat. § 48.193(1)(a)(7) by breaching the NDA which required Paclock to maintain the confidentiality of Lee's confidential and proprietary information which resides in the State of Florida.

12. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Pursuant to Local Rule 1.04(b), this action is appropriately initiated in this Division.

13. All conditions precedent to the commencement of this action, if any, have been performed, satisfied, waived, excused or have occurred.

## FACTUAL BACKGROUND

14. On or about August 25, 2014, Lee and Paclock entered into the Mutual Non-Disclosure Agreement ("NDA") attached as Exhibit A. The effective date of the Agreement as set forth in the preamble is August 25, 2014. Lee and Waugh (on behalf of Paclock) initialed each page of the Agreement and signed and dated the last page of the Agreement.

15. Lee is the founder and President of Proven, a Florida corporation formed by Lee for the purpose of producing and commercializing trailer coupler locks and related products.

16. Lee formed Proven in 2011, after a family trailer was stolen with over $40,000 of equipment in it. A thief easily defeated a low-grade padlock that secured the trailer coupler.

17. In response to the theft, Lee designed, developed and commercialized highly effective trailer coupler locks.

18. Prior to August 25, 2014, Lee and Paclock discussed Proven using hidden shackle padlocks manufactured by Paclock. Due to their disc shape, hidden shackle padlocks are commonly referred to as "puck locks." Lee conceived of using Paclock's hidden shackle padlocks with a new trailer coupler lock conceived and designed by Lee (the "2516 Lock"); a design unknown to Paclock for a market niche that was untapped. The new trailer coupler lock was a premium

level coupler lock, assembled from fabricated components, for a common trailer coupler. The fabricated components were made from steel pipe, steel plate, and a hidden shackle padlock. The potential market for the 2516 Lock was and has since proven to be enormous.

19. Prior to August 25, 2014, Lee did not disclose the 2516 Lock to any person or entity outside of Proven.

20. Lee was reluctant to disclose the 2516 Lock to Defendants for several reasons. Among these, Lee was concerned about the risk that Waugh would recognize the enormous market potential for the 2516 Lock in this untapped market niche, not supply hidden shackle padlocks to Proven, and/or introduce a competing trailer coupler lock having substantially the same design as the 2516 Lock for this untapped market of which Defendants were previously unaware.

21. Lee's concerns were assuaged when Defendants agreed to enter into the NDA as a prerequisite to any consultation or collaboration. Once the NDA was executed, Lee relied upon Defendants' promises in the NDA to maintain the confidentiality of Lee's disclosures. Thus, Lee was able to consult with Defendants and determine, among other things, if Paclock's hidden shackle lock would fit the 2516 Lock with a full faceplate and an inner slide comprised of 1/4" thick steel plate.

6

22. On or about August 27, 2014, in a telephone conversation with Lee at his business office in Palmetto, Florida, Lee described, in confidence, to Defendants the 2516 Lock, including the full faceplate, the 1/4" thick slide and the market for the 2516 Lock as well as market data and projections for this nascent and untapped market niche.

23. A drawing of the 2516 Lock as described by Lee to Waugh in confidence is attached as Exhibit B.

24. The description of the 2516 Lock communicated to Waugh on or about August 27, 2014 along with market information and projections is confidential information under the NDA.

25. Pursuant to Section 2 of the NDA, Defendants agreed to refrain from using the confidential information, except for the purpose of considering collaboration between Lee and Defendants.

26. Pursuant to Section 7 of the NDA, Defendants agreed not to directly or indirectly acquire any interest in, or design, create, manufacture, reengineer, sell or otherwise deal with any item or product, containing, based upon or derived from the confidential information.

27. During the fourth calendar quarter of 2014, Proven began purchasing hidden shackle padlocks from Paclock for incorporation into the 2516 Lock manufactured by Proven.

28. Proven continued purchasing hidden shackle padlocks from Paclock until 2019.

29. During this time frame, Defendants gleaned additional confidential and proprietary information within the protective umbrella of the NDA related to Lee's 2516 Lock unit volume and price margins along with other confidential and proprietary market data.

30. In 2019 the relationship between Proven and Paclock deteriorated when Paclock began withholding keying combinations for existing key codes for locks manufactured by Paclok and sold to Proven. Paclock withheld the key information to pressure Proven to enter into an omnibus purchasing agreement with Paclock. Paclock refused to continue providing keying combinations for existing key codes to Proven, which made it impossible for Proven to provide support to its customers. Waugh even claimed that Proven was obligated to purchase from Paclock under a non-existent purchasing agreement. Ominously, Waugh threatened Lee about consequences of Proven ending its purchasing relationship with Paclock.

31. In an email dated 4/19/2019 to Lee at his Palmetto, Florida offices, Waugh threatened: "And, just so we are all clear, if we cannot get ourselves re-aligned with a new agreement then it will be PACLOCK's intent to produce padlocks for your products, as we have been doing for years, selling them

everywhere we can (including Amazon) touting how these locks are truly the "original equipment manufacturer's locks" for your products and do so at a price substantially lower than what you sell them for today. Whether I sell just one or thousands, it won't really matter to PACLOCK. . . Rather the damage that will be dealt will be to Proven directly with its customer base and its bottom line. You will get lots of calls as to why the exact product being sold by Proven is double the cost. I think you'll have a tough time justifying your past sales and any future sales."

32. Despite Defendants' threats, Plaintiffs elected to cease sourcing its puck locks from Defendants. At the time, Defendants appeared to take no steps to back up Waugh's threats.

33. However, about a year later, out of apparent disgruntlement with Plaintiffs' refusal to capitulate to their threats, Defendants contacted the parties' common Patent Agent and demanded that the Patent Agent cease representing Proven. As a consequence of Defendants' interference, the Patent Agent withdrew from representing Proven, delaying the prosecution of Proven's patent filings and necessitating the retention of a new Patent Agent, all to Proven's financial detriment.

34. On or about September 19, 2023, Paclock began producing and selling a trailer coupler lock, designated the UCS-77S Heavy-Duty Trailer Coupler Lock (the "UCS Lock").

35. Paclock sold UCS Locks through online retailer 1st-In-Padlocks .com LLC ("″1stIP"), an Idaho limited liability company, doing business as 1st-In-Padlocks. 1stIP offered UCS Locks for sale from its website at www.1st-in-padlocks.com to consumers throughout North America including residents of Florida. A copy of a posting for the UCS Lock is attached as Exhibit C.

36. On or about January 5, 2024, Lee ordered a UCS Lock from www.1st-in-padlocks.com . Paclock fulfilled the order by shipping a Paclock manufactured UCS Lock to Plaintiffs in their Palmetto offices in Florida.

37. Photos of the UCS Lock are attached as Exhibit D.

38. The UCS Lock includes a full faceplate and an inner slide comprised of 1/4" steel plate.

39. On or about January 8, 2024, Plaintiffs informed Defendants, *inter alia*, that they breached the NDA by causing, directing and authorizing Paclock to design, create, manufacture and sell the UCS Lock.

40. On February 2, 2024, Plaintiffs demanded that LMH cease and desist further sales of the UCS Locks. LMH appears to have complied with the demand.

41. However, upon information and belief, Defendants continue to manufacture, market, offer to sell and sell the UCS Lock throughout the United States including in the State of Florida and this District either directly or indirectly through other distributors.

## COUNT I
## BREACH OF CONTRACT BY PACLOCK

42. Lee incorporates the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43. Paclock entered into a valid Mutual Non-Disclosure Agreement with Lee for good and valuable consideration.

44. Pursuant to Section 2 of the NDA, Paclock agreed to refrain from using the confidential information, except for the purpose of considering collaboration between Lee and Paclock.

45. Pursuant to Section 7 of the NDA, Paclock agreed not to directly or indirectly acquire any interest in, or design, create, manufacture, reengineer, sell or otherwise deal with any item or product, containing, based upon or derived from the confidential information.

46. Paclock's actions constitute a material breach by Paclock of Section 2 of the NDA.

47. Paclock's actions constitute a material breach by Paclock of Section 7 of the NDA.

48. As a result of the material breaches of the Agreement by Paclock, Lee has suffered damages in excess of $75,000, plus interest, costs and attorneys' fees.

49. Because Lee is without an adequate remedy at law for Paclock's breaches, Defendants should be preliminarily and permanently enjoined from

using a full faceplate and a 1/4" thick slider in any trailer coupler lock made, used, sold or offered for sale.

## COUNT II
## VIOLATION OF THE FEDERAL DEFENSE OF TRADE SECRETS ACT

50. Plaintiffs reincorporate the allegations set forth in the preceding paragraphs 1 – 41 as if stated in full.

51. This is a claim for violation of the Federal Defend Trade Secrets Act of 2016 (the "DTSA"), codified at 18 U.S.C. § 1836 and in related sections.

52. Plaintiffs own, have, maintain and continue to have and maintain Trade Secrets.

53. Plaintiffs' Trade Secrets derive actual independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value the their disclosure or use.

54. The Defendants acquired, used, and disclosed the Plaintiffs' Trade Secrets under circumstances that imposed duties on Defendants to maintain the secrecy of those Trade Secrets, and to preclude the use of these Trade Secrets by anyone other than Plaintiffs.

55. By virtue of the explicit provisions of the NDA, Defendants owed Plaintiffs a duty not to use or disclose these Trade Secrets to others, or to benefit themselves or others.

12

56. Defendants have misappropriated the Plaintiffs' Trade Secrets. This misappropriation has damaged Plaintiffs.

57. Defendants' misappropriation was willful and malicious, in that, without limitation, Defendants knew that Plaintiffs had developed and protected their Trade Secrets, and had imposed a duty of confidentiality on the Defendants, entrusting them with the Trade Secrets and reasonably expecting that they would not misappropriate these Trade Secrets.

58. Plaintiffs are without an adequate remedy of law, and are suffering irreparable harm from Defendants' misappropriation.

## COUNT III
## VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT

59. Plaintiffs reincorporate the allegations set forth in the preceding paragraphs 1 – 41 as if stated in full.

60. This is a claim for violation of the Florida Uniform Trade Secrets Act (the "FUTSA"), codified at Chapter 688.001 *et seq.*, Florida Statutes.

61. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367 because the facts underlying this claim are the same as those facts underlying the preceding DTSA claim.

62. The Defendants had a duty to maintain the secrecy of Plaintiffs' Trade Secrets and not to use these Trade Secrets for their own financial gain.

63. This duty arose from the NDA.

13

64. Having this pre-existing duty, Defendants improperly misappropriated and stole these Trade Secrets, and used them to create the UCS Lock and manufacture and market the UCS Lock throughout the United States, including within the State of Florida.

65. Plaintiffs have not consented to Defendants' use of their Trade Secrets.

66. Defendants knew that their misappropriation and use of Plaintiffs' Trade Secrets was not authorized by Plaintiffs.

67. Plaintiffs' have been damaged by Defendants' misappropriation of Plaintiffs' Trade Secrets.

68. Plaintiffs are without an adequate remedy of law, and are suffering irreparable harm from Defendants' misappropriation.

## COUNT IV
## TORTIOUS INTERFERENCE

69. Plaintiffs reincorporate the allegations set forth in the preceding paragraphs 1 – 41 as if stated in full.

70. Plaintiffs possessed an advantageous business relationship with their Patent Agent, Peter Ganjian.

71. Defendants have intentionally and without justification interfered with Plaintiffs' advantageous business relationship with their Patent Agent by demanding that he cease representing Plaintiffs in patent matters.

72. As a proximate result of Defendants' interference, Plaintiffs have sustained economic loss, injury, and damage, in excess of $75,000 plus attorneys' fees and costs, but in an amount to be proven at trial.

73. Defendants' tortious interference with Plaintiffs' advantageous business relationship with their Patent Agent was willful, wanton and malicious and in full derogation of Plaintiffs' legal rights.

74. Paclock's conduct was malicious, intentional, unjustified and interfered with and caused material breaches of Sections 2 and 7 of the Agreement.

75. Paclock's conduct was in wanton disregard of its contractual obligations under Sections 2 and 7 of the Agreement. This interference was intentional and without justification or privilege.

76. As a result of Paclock's intentional and improper interference, Lee was damaged in an amount to be determined at trial, but which exceeds $ 75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court enter one or more orders granting the following relief:

A) The entry of a preliminary and permanent injunction enjoining Defendants from directly or indirectly making, using, selling and offering to sell any trailer coupler lock that includes a full faceplate and a 1/4" thick slider or in any further way exploiting Plaintiffs' confidential and proprietary Trade Secrets;

B) The entry of a judgment for monetary damages against Defendant Paclock and in favor of Lee for breach of the NDA;

C) The entry of a judgment for monetary damages against Defendants for violation of the DTSA for the actual loss caused by Defendants' misappropriation of Plaintiffs' Trade Secrets, or in the alternative to the preceding, imposing a reasonable royalty for Defendants' misappropriation;

D) Awarding Plaintiffs exemplary damages in a sum double its monetary damages for violation of the DTSA;

E) Awarding Plaintiffs damages for the actual loss caused by Defendants' misappropriation of Plaintiffs' Trade Secrets, or for unjust enrichment, or in

the alternative to the preceding, imposing a reasonable royalty for Defendants' misappropriation in violation of the FUTSA;

F) Awarding Plaintiffs exemplary damages in a sum double its monetary damages for violation of the FUTSA;

G) The entry of a judgment for monetary damages against Defendants for tortious interference with Plaintiffs' advantageous business relationship with their Patent Agent;

H) Awarding Plaintiffs' exemplary damages in an amount not less than $500,000 for the willful, wanton and malicious tortious interference with Plaintiffs' advantageous business relationship with its Patent Agent;

I) Awarding Plaintiffs their reasonable attorneys' fees under Counts II & III;

J) Awarding Plaintiffs their costs; and

K) An award of such other relief that this honorable Court may deem just and proper.

17

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

> /s/ *Frank R. Jakes*
> Frank R. Jakes, FBN 372226
> Trial Counsel
> JOHNSON, POPE, BOKOR,
>   RUPPEL & BURNS, LLP
> 400 North Ashley Drive, Suite 3100
> Tampa, FL  33602
> (813) 225-2500
> (813) 223-7118 (Fax)
> E-Mail:  frankj@jpfirm.com